William C. Hecht, Jr., J.
Petitioner moves for an order declaring that an election of directors of the corporation on April 13, 1955, a subsequent election of directors and officers on September 6, 1955, and all matter transacted at such meetings be deemed void; directing that the directors and officers elected at such meetings cease to act, appointing a time and place for the election of officers and directors, and restraining the voting of certain shares of common stock issued to one of the respondents.
Briefly stated, the corporation was organized in August, 1953, with the petitioner and Margaret 0. Lipton as stockholders. Miss Lipton was active in the corporation, petitioner was not, but her brother, Ralph Grodstein, acted in her behalf and was the salesman for the firm. It appears from the papers that the corporate affairs were conducted informally and that the original directors were petitioner, Miss Lipton, and Grodstein. The waiver of notice of the first meeting of directors was signed by only Miss Lipton and Grodstein, and the organization minutes indicate that petitioner and her brother were elected by two directors. There were never any formal meetings of the corporation, and it is clear that all parties understood and consented to arrangements for the operation of the business, which were made from time to time.
It further appears that the firm was in bad financial straits and new money was required to continue operations. Miss Lipton agreed to contribute $5,000 in return for issuance to her of an additional 50 share of common stock. Furthermore, it was necessary for the directors to guarantee loans for the corporation and the bank would not accept Grodstein’s signature. He was asked to resign as a director and to discuss the situation *74 with the petitioner, who resides in Pittsburgh, and to persuade her to come to a meeting scheduled for April 13,1955. Petitioner was ill and could not come to the meeting but Grodstein attended and stated that he had been to Pittsburgh and had obtained authorization and full power to act for petitioner, as he had always done in the past, whereupon the meeting was held and 50 shares of common stock were sold to Miss Lipton for $5,000. Grodstein resigned as a director and officer, and one, Cowardine, was elected to fill the vacancy, and a Miss Feiner was elected to fill Grodstein’s place as secretary of the corporation. The petitioner was elected a director and a vice-president.
It appears that petitioner, through Grodstein, had stated that she approved all the business to be transacted at the meeting, on condition that she receive dividends on her preferred stock. This condition was fulfilled by the dispatch to her of a letter on April 18 enclosing a check in the amount of $27.50 and explaining to her that henceforth she would receive her dividends in monthly installments in order to make it less burdensome on the corporation. The petitioner admits receiving this letter and the check.
The record discloses that business did not improve, and on August 15, 1955, Miss Lipton wrote to petitioner requesting her signature on a bank loan, since more funds were indispensible to the further continuance of the business. The petitioner refused to sign the bank forms which had been sent to her and, according to Miss Lipton, it became necessary to hold a meeting to determine the future course of the corporation. Petitioner was given a choice of a date, and a meeting was adjourned on the date selected because petitioner could not attend. The meeting was finally held on September 6,1955, but petitioner refused to join in transacting any business because of the dissatisfaction which was expressed concerning the services of her brother, Grodstein. She walked out of the meeting. It is to be noted that the petitioner was offered a seat on the board of directors if she would be willing to undertake the obligations required of the corporation’s directors to obtain bank loans, without which the business could not survive.
I deem it unnecessary to enter into a long discussion concerning the technical requirements of the General Corporation Law. I am persuaded that the affairs of this corporation were not carried on in a formal manner and that Grodstein acted for and on behalf of the petitioner. The petitioner had knowledge of the business to be transacted at the April 13, 1955 meeting and consented thereto and ratified all the transactions, as evidenced, inter alia, by her retention of the dividend check which had been sent to her, and cashing it. I agree with respondents that she *75 has had the benefit of the $5,000 which had been contributed by respondent Lipton in return for the issuance of the 50 shares of common stock, and that she had always permitted the business to be conducted by Miss Lipton and Grodstein and never insisted that the technical requirements be observed. I am of the opinion that the conduct of the petitioner constitutes ratification.
If it be true that the meeting of April 13, 1955, was a valid meeting, it follows, then, that petitioner’s attack on the meeting of September 6, 1955, must fail, since the basis for her claim of invalidity of the latter meeting rests on the issuance of the 50 shares of stock to respondent Lipton at the first of the disputed meetings. According to the affidavit of respondent Lipton, the minutes of the April 13, 1955 meeting show that she and Grodstein met and approved the issuance to her of the 50 shares of common stock for $5,000 and that thereafter Grodstein resigned as a director and secretary. Miss Feiner was then elected to fill his place as secretary and petitioner was elected as a director and vice-president.
There is merit to respondent’s contention that in a corporation such as the one in question everything that could be done by the directors could be done by the stockholders, and that the meeting could also be viewed as a joint meeting of directors and stockholders, and that as to petitioner’s argument that the directors’ meeting was invalid because she did not appear, the defect is remedied by virtue of the ratification by the stockholders of the transactions there conducted.
It might also be noted, since petitioner had notice of all the proceedings of which she now complains, she waited an undue length of time within which to commence the present proceedings. Much has occurred in connection with the affairs of this corporation since the two meetings and, according to respondents, the corporation is for the first time operating successfully, although the deficit has not yet been liquidated.
Petitioner will benefit by the profitable operation of the corporation, and she is not being denied a voice in its affairs if she will assume the responsibilities which go with a directorship. It would be obviously unfair at this time, 10 months after the event complained of, to seriously consider this petition under all the circumstances here.
For all of the foregoing, the motion is in all respects denied.